I'm going to be very brief and try to save the majority of my time for questions and argument. The question this court certifies for review is whether the state court's decision on competency determination depended on whether Mr. Cuen was confident to consult with Amnesty's attorney in conducting a defense in a rational manner, and that's according to the Supreme Court decisions of Droll, Cooper, and Dusky. Both the Supreme Court and the California Supreme Court have held that the mental health terminology used is not important and not determinative, that psychiatric definitions may be different than legal definitions, and that you look at the actual facts in terms of whether he's able to assist his counsel to determine incompetency. Here we have two mental health experts, both of whom agree that Mr. Cuen had a mental disorder. One called it a paranoid personality disorder, excuse me, a paranoid delusional disorder, and that ended the inquiry for him on the question of competency. The other called it a paranoid characterological disorder that made him one, having impediments, important term under the case law, with regard to his capacity to assist his counsel in the conduct of his defense in a rational manner, end quote, because of the way he reviews reality, the way he views reality. Two, that he was unlikely ever to be in a position to move to a direction of a defense based on the facts communicated to him by his counsel. Three, that he was unlikely to change. And four, that this occurred because he suffered from a lifelong pattern of behavior that resisted adjustment or alteration, was inflexible, that he believed very strongly and firmly, all because he was mistreated by his family throughout his life. All of this is consistent with DSM-IV, the psychiatric text which he relied on, which also says that characterological disorders resist adjustment or change, which are inflexible, are enduring, pervasive, stable over time, and lead to an impairment. Again, an important word under the case law that I've cited in my brief. Didn't the California Court of Appeals go beyond just the expert opinions and state that there was other evidence that made appropriate the finding by the court that he could cooperate with counsel and support counsel in his trial? Well, I think that primarily they relied upon the statement by the second expert that he could if he wanted to. But again, my point on that issue is simply that if he was subject to this mental impairment, that he was not going to cooperate with his counsel because he had this mental impairment, and that he wasn't going to cooperate unless he didn't have it anymore, there really is no practical difference between could have it and would have it. I understand. But they looked at the record, didn't they, and found that he could assist. They found that Dr. Harper said he could assist counsel even despite his disability. Well, again, I think they relied mostly on that. I do recall that they pointed to the fact that when Mr. Coyne was making obscene gestures in the courtroom, that he stopped when he was ordered to stop. I'm not exactly sure how that proves that somebody is competent. If the Court could remind me which other specific factors you are thinking of. The Court of Appeals found that in a prior case where he had the same complaints that he was ultimately acquitted, and that was some evidence supporting inclusion, he was capable of cooperating with counsel. Well, he was acquitted, apparently, of the crime, but the fact that he had the same complaint and that he's been doing so for a very long time is consistent, again, with the second expert's opinion and with DSM-IV, that this is enduring, it's lifelong, it's inflexible, it's unlikely to change. Is this a factual finding by the California court? It's actually partly factual and partly not. It's factual to the extent that it's based upon the issue that we've addressed so far, which is whether he can assist his attorney. And then the question becomes was that fairly supported by the record, or which is what the Supreme Court said in Mulford and Demosthenes, or whether it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. So to the extent that it's factual finding, you are correct. But I'm arguing, as the court certified the question, that it was an unreasonable finding in light of the facts. But secondly, it's not strictly a factual finding, because the second expert actually bases opinion on two things. One is that characterological disorders simply don't meet, that you have to have something called a mental disorder and that characterological disorders don't meet that, which is contrary both to the U.S. Supreme Court and California Supreme Court. But the factual finding was that he was competent to stand trial. I'm sorry? The factual finding was that he was competent to stand trial. Well, the trial court didn't actually say why they found, which ground they agreed with, either or both. They simply said, I've heard all the comments, and I find you competent. And that's the last page of the first volume of RDRs. So it's not entirely clear. Well, that's pretty clear, isn't it? No, that's pretty clear that he's competent to stand trial as far as the finding. I obviously respectfully disagree that it's clear he's competent as to the finding. Again, the trial court didn't say which of the grounds. I'm not trying to argue in any sense with that. Well, they let him be tried. I'm sorry? They let him be tried. So that's pretty good indication, isn't it? That they found him competent. Yes. Again, which argument would provide on which fact? Well, what difference does it make which argument? Because one is the finding of fact, and the other is a legal question. And that's the only thing I'm pointing out. Under our case, Butko v. Budge, it is a factual finding, isn't it? It would be, of course, only based on whether or not he was capable of assisting his attorney. If it was the other ground that the expert cited, then I think that's a legal question. You seem to rely, though, a lot on the experts. And Etchiandy, I'm not sure I'm pronouncing it correctly, who was your client's expert, indicated that he realized that his was an, in quotes, close call, whereas Mr. Harper, who testified for the government, said he was 95% sure of his judgment. And he also said, rather, that he understood that there could be substantial controversy about his opinion. I think the bottom line is that these psychiatric terms, which are not determinative of legal outcomes or legal decisions, do overlap. I believe there was testimony to that effect. But there's controversy about the use of those terms, even by people who criticize DSM-IV. And I think what we have to do is get beyond that terminology and get to, was there an impediment to his rational existence? But ultimately, counsel, don't you get back to what Judge Hugg indicated? The California court found that he was able to do this. So then you get two experts arguing. One says one thing, the other one says another thing, not surprisingly. And even by your own admission, that doesn't really solve anything. But the burden is on your client, is it not? The burden is on the defendant by preponderance of the evidence. Okay. Now, how do you get to the point that you want us to get to? I mean, we're bound by AEDPA, and I'm having difficulty grasping where you meet your burden under the circumstances. Again, the certified question was whether the decision involved unreasonable interpretation of the facts and whether the evidence was presumptive. And my argument is that the statement that he couldn't cooperate with his attorney was contrary, one, to everything else that that same expert said about the inflexibility, lifelong nature of his impairment, the admission that he had an impediment to doing so, which is all the Supreme Court requires. It does require absolute inability to cooperate. It's contrary to DSM-IV, which is what that same expert relied upon, and, of course, contrary to the other experts. I trust you're not saying that making an obscene gesture makes someone unable to cooperate. Otherwise, the chief of staff in the White House would be unable to do anything. No. That is one thing that would be a factor to consider. Of course, it does. Okay. Do you want to save any of your time? You've got 20 seconds. Okay. Great. All right. For the government, Mr. Young, is that how you say it, Mr. Young? Young. Young. Sorry. May it please the Court, Your Honor, I have a question for Respondent Evans. I'll be brief. If I could, I'd like to point out what's not in dispute in this case and what's been conceded by defense counsel and by the defense expert, which is that Petitioner understood the nature of the charges against him. He understood the nature of the proceedings. He understood the roles of the attorneys. The only thing that was in question here is whether or not Petitioner could or would rationally assist his counsel in preparing his defense. And even the defense counsel, I mean even the defense expert, stated not once but twice in pages 38 and 34 of the excerpts of record that it was a close call. Two separate times the defense expert found this to be a close call. And, of course, the prosecution expert made a clear and compelling case that Petitioner suffers from a characterological disorder that does not prevent him from rationally assisting counsel. He could do so. He would not because it is fixed and entrenched belief that his family is against him, but he could do so. The Constitution and the California statutory scheme does not require the actual cooperation of a defense in order to proceed a trial. It only asks for the ability to do so. Here there was clear and convincing evidence, there was at least substantial evidence to support the state public court's determination, that Petitioner could do so. He simply would not. Do you have any problem with the expert Dr. Harper's statement that the defendant would not be able to assist his counsel in a rational manner, not based on mental disorder, because he thought if he felt he wished to cooperate he could, but his unwillingness to assist counsel was probably not going to change? I mean isn't he caught up in that somewhat where the expert testified, and I'm referring to the record, it's 17, that he would not be able to assist counsel in a rational manner, but that he could if he decided he wanted to, but because of his difficulties, emotional difficulties, he would not assist counsel. I'm not saying that he couldn't talk to counsel about the facts, et cetera, but that he's unwilling to cooperate with them because of his condition. Well, that certainly is in the record, and our position is that this simply, that this entrenched belief in the fact that his family is persecuting him does not amount to a mental disorder. Now, he has obviously a very fixed and powerful belief, just as many defendants and litigants have fixed and powerful beliefs in ludicrous or absurd legal positions. Our position is that Petitioner is no different from a tax protester or a person who believes that the U.N. is controlling the United States government. A defendant is free to espouse foolish and irrational legal positions, but that doesn't make him incompetent to stand trial. It's fairly clear that Petitioner has an understanding of the proceedings that far surpasses just his unwillingness to cooperate with counsel. So this is not a situation where the defendant is incapable of comprehending what's going on around him. He's capable of doing so. He simply demands and insists that he be found innocent because his family has persecuted him, and that simply does not amount to, under the established Supreme Court precedent, it doesn't amount to incompetence. But if he has an irrational belief that people are conspiring against him, his family and his attorneys and so forth, wouldn't that be more than just a volitional idea that I'm not going to cooperate? It would be something that is in his disorder that is preventing him from doing so. Well, Your Honor, that could be the case, but it's not the case here. I mean, it's certainly true that his belief that he's being persecuted by his family could be hypothetically part of a larger disorder. It's not in this present case. Indeed, Petitioner's own expert, Dr. Etchiantia, put in his report the fact that this fixed ideation that his family is prosecuting him is essentially the only symptom he has of this alleged mental disorder. Every other facet seems to correspond to a normal and rational understanding of reality. Dr. Etchiantia noted that he doesn't have other ideas of reference. He doesn't have other bizarre beliefs about the insertion of thought control. He doesn't have grandiose delusions. He doesn't have auditory or visual hallucinations. The only sign he has of this alleged mental disorder is this fixed belief that his family is against him. And without more, I mean, obviously we could posit a situation in which there was more, but without more in this case, we can't make a finding that the Petitioner was incompetent. Does the case law require that the defendant in this case show that his irrational belief actually affected his dealing with counsel or simply does he have to show that he had the mental susceptibility, the mental problem that could create an issue? Well, Your Honor, we'd have to show, the Petitioner would have had to show that he had a mental disorder that impaired his ability. Impaired or could impair? Well, I think absolute impairment is the standard. Basically, he has the burden to show that in this case, his mental impairment actually impaired his ability to deal with his counsel. Yes. Is that correct? Yes, Your Honor. Okay. So for the reasons that are set forth in the record, we think there's clearly not, there's probably been no showing that the State Appellate Court's ruling was objectively unreasonable. And, in fact, based on the testimony of the defendant's own expert, it's pretty clear that this could have gone either way. Based on the testimony which the State Appellate Court was entitled to credit of the prosecution expert, it's fairly clear that Petitioner did not suffer from a mental disorder and that he could cooperate with his counsel even though he chose not to do so. I'm happy to answer any further questions. Otherwise, I'm prepared to submit. Thank you, counsel, for your presentation. Mr. Ebert, you have a whole 20 seconds left. I thought it was 21, but I'll accept it. Let's give you 21. We don't want to deprive the man of his time. We'll give you 21 seconds here. Your Honor, first of all, I want to point out that this is a man who has been abused all of his life by his family, violently and apparently sexually. He not only believed that this particular prosecution was brought against him because his family wanted to unfairly and unjustly put him in prison, he also believed that each of the three attorneys that he had, all of whom he tried to fire on the grounds that they were conspiring with his family against him, that they were part of the conspiracy, too. Thank you very much for your presentation, Mr. Ebert, Mr. Jung. The case of Quinn v. Evans is submitted. We will now hear Kingdom v. Lamarck. I guess Mr. Osterhout, is that it?
judges: Hogan, Hug, Smith M.